520 A.2d 1223

Jane Nason, individually and as beneficiary of the Trust under the Will of Bertha A. Hudson; Harry Nason, as Trustee of the Trust under the Will of Bertha A. Hudson; and Ralph W. Brenner, as Trustee of the Trust under the will of Bertha A. Hudson, Petitioners *v.* Commonwealth of Pennsylvania; Al Benedict, Auditor General of the Commonwealth of Pennsylvania et al., Respondents.

Argued November 20, 1986, before Judges CRAIG, DOYLE and COLINS, sitting as a panel of three.

*Elizabeth A. Read,* with her, *Carol A. Mager, Montgomery, McCracken, Walker & Rhoads,* for petitioners.

*Clarence A. Dickerson,* Solicitor for Mental Health and Mental Retardation Board of Chester County.

*Kathleen F. McGrath,* Deputy Attorney General, with her, *Allen C. Warshaw,* Director, Executive Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE DOYLE, February 3, 1987:

Jane Nason, a mentally retarded individual, and two trustees of a testamentary trust (Trust) under which she is a beneficiary (Petitioners)[1] have filed a mandamus ac-

---

[1] The trustees joining Nason in this action as Petitioners are Harry Nason and Ralph W. Brenner, trustees of the Trust established under the Will of Bertha A. Hudson.

tion in our original jurisdiction against the Commonwealth of Pennsylvania, Department of Public Welfare and certain state officials (Commonwealth Respondents),[2] and Chester County and certain county officials (County Respondents)[3] seeking to compel the respondents to pay for her interim care at a private facility until she can be placed in a state facility. Before us are Petitioners' motion for summary judgment and cross-motions for summary judgment filed by both the Commonwealth and County Respondents. We deny Petitioners' motion and grant summary judgment in favor of both the Commonwealth Respondents and the County Respondents.[4]

The material facts in this case are undisputed. Jane Nason is a mildly retarded 61-year-old adult who currently resides at the Devereux Foundation (Devereux) in Chester County, a private, state-licensed residential school for the mentally handicapped. She was placed in Devereux by her family at age nine, and since 1972 her care has been paid for through income from the Trust. In recent years, however, the cost of her care at Devereux has exceeded the income of the Trust, result-

---

[2] In addition to the Department of Public Welfare, Petitioners' amended petition for review named as respondents the Commonwealth's Auditor General, Treasurer, and Secretary of Welfare. By stipulation, the Auditor General was dropped as a party, and the Treasurer's demurrer was sustained in a previous decision of this Court. *Nason v. Commonwealth*, 90 Pa. Commonwealth Ct. 130, 494 A.2d 499 (1985).

[3] Besides Chester County, also named as parties are the Chester County Commissioners, the Chester County Mental Health/Mental Retardation Board, and its Administrator.

[4] Summary judgment may be granted only when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *1412 Spruce, Inc. v. Pennsylvania Liquor Control Board*, 70 Pa. Commonwealth Ct. 501, 453 A.2d 382 (1982), *aff'd* 504 Pa. 394, 474 A.2d 280 (1984).

ing in some depletion of the Trust principal.[5] Consequently, Nason's family sought to have her placed in a state-operated facility in order to reduce the expense of her care.

In January 1983, Nason was accepted for placement in the state-operated mental retardation facility at Embreeville Center (Embreeville) in Chester County, Pennsylvania. Due to a chronic shortage of available beds, however, Nason was unable to be admitted and instead was placed on a waiting list for the facility. Con-

------

[5] Under the terms of the trustor's Will, Jane Nason's care at Devereux is provided for as follows:

> I am very interested in the welfare, care, comfort, and support of my niece, JANE NASON, and during my lifetime I have had various conferences with the officials of the DEVEREUX FOUNDATION, of Wayne, Pennsylvania, concerning the care of my said niece for the balance of her life. Therefore, if my said niece is living at the time of my death and if the said DEVEREUX FOUNDATION will accept and take her into their school, my Trustees shall, if possible, arrange to have the DEVEREUX FOUNDATION provide for my said niece at the normal periodic rates charged by the DEVEREUX FOUNDATION to other persons in its care. *Such periodic rates shall be paid from income and so much of the principal as is necessary.* (Emphasis added).

As of 1985, the trust had a value of approximately $294,000. For the years 1981 through 1985, the cost of Jane Nason's care at Devereux and income from the Trust are as follows:

| YEAR | DEVEREUX COST | TRUST INCOME |
|------|---------------|--------------|
| 1981 | $13,780 | $16,367 |
| 1982 | $15,730 | $16,606 |
| 1983 | $18,300 | $18,970 |
| 1984 | $23,400 | $19,720 |
| 1985 | $30,500 | $20,219 |

It is not certain from the record what portion of the annual cost at Devereux was actually paid by the Trust; there is no question however that such cost for the two years indicated and in the future will require payment from the trust principal.

sequently, she has continued to reside at Devereux. This present suit has been brought under the Mental Health and Mental Retardation Act of 1966 (MH/MR Act), Act of October 20, 1966, Special Sess., P.L. 96, *as amended*, 50 P.S. §§4101-4704, to compel the Commonwealth of Pennsylvania and Chester County to pay for Jane Nason's interim care at Devereux until she can be admitted to Embreeville, and to gain reimbursement for all amounts heretofore expended for her interim care.

In support of their motion for summary judgment, Petitioners rely on Section 507 of the MH/MR Act, 50 P.S. §4507. In relevant part, that provision reads:

> (a) Except as provided in sections 501, 502 and 505, the Commonwealth shall pay for the following:
>
> . . . .
>
> (4) Interim care of mentally retarded persons, who have been removed from their homes and who, having been accepted, are awaiting admission to a State facility.

50 P.S. §4507(a)(4). Petitioners contend that, since none of the exceptions in Sections 501, 502 or 505 apply,[6] the language of Section 507(a)(4) absolutely compels public payment for Jane Nason's interim care. We disagree.

In making their argument, Petitioners urge that we disregard the dictates of another provision of the MH/MR Act, Section 503, 50 P.S. §4503, in particular, Section 503(a), which provides:

> (a) Neither the State nor a county shall be required to expend public funds under this act on behalf of a mentally disabled person until such person, who has been admitted or committed or

---

[6] Because of our disposition of this case, we need not and do not decide whether Sections 501, 502 or 505 of the MH/MR Act, 50 P.S. §§4501, 4502 or 4505, apply here.

is receiving services or benefits under this act, shall have exhausted his eligibility and receipt of benefits under *all other* existing or future, *private,* public, local, State or Federal *programs.*

50 P.S. §4503(a) (emphasis added). Here, the Petitioners seek public funding for Jane Nason's interim care at Devereux, despite the existence of a sizeable trust fund which specifically provides that the trust income *and principal* is to be used to fund her care at that facility.[7] Although this is a question of first impression, we believe it is clear that the trust fund in this case is precisely the sort of "private program"[8] under which the Legislature intended benefits should be exhausted before the MH/MR Act requires payment from the public fisc for a mentally handicapped person's interim care. Accordingly, we hold that, before Jane Nason can be entitled to public payment for her interim care at Devereux,[9] she must first exhaust her benefits under the Trust; that is, she must exhaust both the income and the principal of the Trust.

Our interpretation of Section 503(a) of the MH/MR Act is consistent with the mandates of the Statutory Construction Act of 1972,[10] particularly Sections 1921 and 1922, 1 Pa. C. S. §§1921-22, which require that we not only ascertain legislative intent, but also recognize that particular provisions of a statute are to be con-

---

[7] *See supra* note 5.

[8] We also take note of the fact that *Webster's New Collegiate Dictionary,* 912 (1980) defines "program" to mean, *inter alia,* "a plan or system under which action may be taken toward a goal," which certainly would encompass a trust fund explicitly established to provide for the care of a mentally handicapped person. *See supra* note 5.

[9] We do not address the question of whether, and to what extent, Jane Nason may be entitled to public funding for her interim care at Devereux upon total depletion of the Trust.

[10] 1 Pa. C. S. §§1501-1991.

strued harmoniously, if possible, with the statute's other provisions. The MH/MR Act contains other provisions requiring a mentally handicapped person or those legally responsible for such person to bear at least a portion of the cost associated with the individual's care. *See* Sections 501, 502, 504 of the MH/MR Act, 50 P.S. §§4501, 4502, 4504. To permit the beneficiary of a trust fund to avoid paying for his or her own interim care, although he or she is financially able to do so, would be inconsistent with the scheme established by the MH/MR Act.

Additionally, Section 1922(5) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(5), creates a presumption favoring the public interest over any private interest. By construing Section 503(a) of the MH/MR Act to include trust funds, the public interest is served by requiring that those with the resources to pay for their interim care do so before burdening the public at large.

Accordingly, we hold that because the Petitioners have no clear legal right to relief, their motion for summary judgment is denied, and because neither the Commonwealth Respondents nor the County Respondents have any present obligation to fund Jane Nason's interim care at Devereux until the Trust is depleted,[11] we grant their cross-motions for summary judgment.

## ORDER

Now, February 3, 1987, the motion for summary judgment of petitioners Jane Nason, Harry Nason, and Ralph W. Brenner is hereby denied, and the cross-motions for summary judgment of respondents the Commonwealth of Pennsylvania, Department of Public Welfare, the Secretary of Welfare, the County of Ches-

---

[11] *See supra* note 9.

ter, the Chester County Commissioners, the Chester County Mental Health/Mental Retardation Board, and the Administrator of the Chester County Mental Health/Mental Retardation Board are hereby granted.

DISSENTING OPINION BY JUDGE COLINS:

I dissent.

I cannot agree with the majority's interpretation that "private" and "program" as used in Section 503 of the MH/MR Act, 50 P.S. §4503, *ipso jure,* equate to a requirement that both the principal and interest of this trust must be depleted.

I agree with Petitioners that the language of Section 507(a)(4) of the MH/MR Act, 50 P.S. §4507(a)(4), absolutely compels the Commonwealth's payment for Jane Nason's interim care.